UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Martrell Desamonta Booker on behalf of himself and all others similarly situated

Plaintiffs,

v.

Dollar Aisle, LLC,

Defendant

Case No.: 1:26-cv-4319

Hon. Charles P. Kocoras

# BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Dollar Aisle, LLC, by and through its undersigned attorneys, states as follows for its Brief in Support of its Motion to Dismiss:

## INTRODUCTION

This case presents a straightforward question with a simple answer: when a plaintiff alleges he visited a website, encountered barriers, and added a product to his cart, but contemporaneous technical records show none of that ever happened, does he have standing to sue? He does not, and this Court should dismiss his First Amended Complaint ("FAC"). This case is not about whether accessibility matters. It does. The Americans with Disabilities Act serves the vital purpose of eliminating genuine barriers that deny individuals with disabilities equal access to goods and services. But that purpose is not advanced by treating every alleged technical deviation from a private accessibility guideline as though it necessarily establishes an actual denial of access.

Defendant Dollar Aisle, LLC ("Dollar Aisle" or "Defendant") sells LED light products through its website, https://www.ledmyplace.com (the "Website"). Plaintiff Martrell Desamonta Booker alleges that on March 24, 2026, he visited that website, encountered accessibility barriers, and attempted to add the Smart Solar LED Wall Lights to his cart. Defendant's contemporaneous

technical records tell a different story: no user from Illinois viewed the Smart Solar LED Wall Lights or added that product to their cart on that date, and no session matching Plaintiff's alleged conduct occurred. When Defendant raised this discrepancy with Plaintiff's counsel before filing this motion and asked Plaintiff to identify the alleged session or clarify the factual basis for his claims, Plaintiff declined. A complaint built on a website visit that never happened cannot establish the concrete, particularized injury Article III requires.

That threshold defect would be significant in any case. It is particularly telling here because Plaintiff and his counsel have filed at least fifteen materially identical ADA website accessibility complaints before this Court in the past five months—against sellers of Japanese knives, paper dinnerware, women's jewelry, an inflatable kayak, and now LED lights—each reciting the same alleged barriers in the same paragraph, with only the defendant's name and product changed. As this Court recently observed in a nearly identical case involving Plaintiff's counsel's firm, this pattern operates as "a glorified copy-and-paste operation" in which businesses face pressure to settle "because settling is cheaper than fighting." *Henry v. Omoi, Inc.*, No. 25-CV-3151, 2026 WL 636799, at *2 (N.D. Ill. Mar. 6, 2026). That pattern reinforces what the evidence shows: Plaintiff's allegations reflect a litigation template, not a genuine consumer experience.

## STATEMENT OF FACTS

### I. Plaintiff and His Attorneys' Nearly Identical Lawsuits

Both Plaintiff and his counsel have a well-documented history of filing a high volume of nearly identical ADA website accessibility complaints. These complaints follow a boilerplate template with only minimal customization, typically inserting the name of the website, the alleged accessibility issues, and a product the plaintiff purportedly attempted to purchase. **Exhibit 1**.

Plaintiff's allegations are nearly identical to those made in his many other ADA complaints filed in this District. In each case, he uses a nearly verbatim pleading template, changing only the defendant's name and details. For example, in *Booker v. Anheuser-Busch, LLC*, No. 1:26-cv-4921, he alleged the same set of barriers while attempting to purchase beer-themed clothing; in *Booker v. Seisuke Knife Inc.*, No. 1:26-cv-5858, it was Japanese knives; in *Booker v. Kent Water Sports Holdings, LLC*, No. 1:26-cv-6597, it was an inflatable kayak, and in *Booker v. Alexis Russell Jewelry, LLC*, 1:26-cv-3403, it was women's jewelry. **Exhibit 1**. Yet, in each one, the alleged barriers include the same elements in the same paragraph of each complaint.

And not only are these complaints nearly identical to each other—they are nearly identical to every other complaint filed within this Circuit within at least the past year by Plaintiff's counsel's law firm, The Equal Access Law Group. What are the odds that hundreds of different business owners, spanning vastly different categories of goods, with different website styles, created by different website designers, and hosted on different website platforms, all face identical allegations, each located in the same paragraph of each respective complaint?

## II. Plaintiff's First Amended Complaint

Plaintiff Martrell Desamonta Booker ("Plaintiff") is a visually impaired individual who alleges that he uses screen reader software to access websites on the Internet. FAC at ¶ 2. Defendant is a Kentucky limited liability company. *Id.* at ¶ 14. According to the Complaint, Plaintiff visited Dollar Aisle's Website on one occasion on March 24, 2026 with the intent to purchase LED wall lights. FAC ¶ 41. Plaintiff alleges that, while browsing the Website using screen-reader software, he encountered certain features he contends were not compatible with his assistive technology. *Id.* He claims that these "access barriers render[ed] the Website inaccessible to, and not independently usable by, blind and visually impaired individuals." *Id.*

Plaintiff does *not* allege that he attempted to contact Dollar Aisle regarding his experience, sought assistance with any transaction, or attempted to place an order through any alternative means. Nor does he allege that he returned to the Website after his single visit or that he has attempted any subsequent purchase. Plaintiff instead makes a conclusory allegation that he intends to return to the website "immediately" once it becomes accessible. FAC ¶ 42.

Plaintiff initially filed his Complaint on April 17, 2026. He later filed the First Amended Complaint ("FAC") on July 17, 2026. The amendment removed several barriers that the original Complaint had attributed directly to Plaintiff's March 24, 2026 visit, but remained materially the same. Crucially, the FAC does not provide more detail or clarity. The FAC does not address the issues Defendant raised in the July 7, 2026 hearing. The FAC merely contains a reorganization of the same material content as the original Complaint.

## STANDARD OF REVIEW

A Rule 12(b)(1) standing challenge may be either facial or factual. A "facial challenge argues that the plaintiff has not sufficiently '*alleged* a basis of subject matter jurisdiction.'" *Silha v. ACT, Inc*., 807 F.3d 169, 173 (7th Cir. 2015) (citation omitted) (emphasis in original). "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id*. However, a "factual challenge contends that 'there is *in fact* no subject matter jurisdiction,' even if the pleadings are formally sufficient." *Id*. (citation omitted) (emphasis in original). "In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Id*. "In response to a factual challenge, the plaintiff can no longer rest on the allegations in the complaint but must adduce specific *evidence* to satisfy each of the elements necessary to

establish his standing to sue." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (emphasis in original).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). While the Court must accept well-pleaded factual allegations as true, it need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

## ARGUMENT

Plaintiff's FAC fails at both the jurisdictional and merits stages. He lacks Article III standing because he does not plausibly allege either a concrete, individualized injury or a real and immediate threat of future harm. Apart from standing, the FAC fails to state a claim because it treats alleged technical deviations from nonbinding accessibility guidelines as discrimination under Title III and assumes that a standalone website is itself a place of public accommodation.

### I. PLAINTIFF LACKS ARTICLE III STANDING

"As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). To establish standing, Plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury-in-fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiff has not, and cannot, establish a

concrete and particularized injury and therefore cannot establish Article III standing through his boilerplate, conclusory, and contradictory allegations.

Defendant challenges Plaintiff's standing both facially and factually. Facially, the FAC does not plausibly allege that Plaintiff personally suffered a concrete denial of access or faces a real and immediate threat of future injury. Factually, Defendant submits objective evidence controverting Plaintiff's categorical allegations that the Website provides "no meaningful accommodations," or that Plaintiff visited Defendant's Website at all on March 24, 2026. Where a defendant mounts a factual challenge to subject-matter jurisdiction, the Court may consider evidence outside the pleadings, and the plaintiff may not rest on the allegations of the complaint but must establish the jurisdictional facts supporting standing. *See Apex Digit. Inc.*, 572 F.3d at 444.

### A. Plaintiff's Demonstrably False Allegations Do Not Establish Article III Standing.

A complaint's allegations are ordinarily accepted as true at the pleading stage. But that rule does not require the Court to accept allegations that are demonstrably false. "The law is clear that when considering a motion that launches a factual attack against jurisdiction, 'the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists.'" *Apex Digit. Inc.*, 572 F.3d at 444.

Plaintiff's standing theory depends on an alleged website visit and interaction with Defendant's products. Those allegations are not merely background facts; they are the asserted basis for Plaintiff's claimed injury-in-fact and traceability. But Defendant's contemporaneous technical records show that no such interaction occurred. **Exhibit 2.** On March 24, 2026, Defendant's records show no session matching Plaintiff's conduct, no visitor from Kane County,

Illinois, and no visitor viewing the Smart Solar LED Wall Lights from the State of Illinois. **Exhibit 3**. Because Plaintiff did not experience the alleged website interaction, Plaintiff has not established a concrete and particularized injury. Plaintiff cannot manufacture Article III standing through boilerplate allegations that are contradicted by objective technical records.

This is not a situation in which Defendant first raised the discrepancy through motion practice. Before filing this Motion, Defendant advised Plaintiff's counsel that Defendant's contemporaneous technical records did not reflect the website visit, product interaction, or add-to-cart event alleged in the Complaint. Plaintiff's refusal to correct even after amendment reinforces the jurisdictional problem: once Defendant factually challenges standing with objective technical records, Plaintiff may not rest on boilerplate allegations. Plaintiff must establish a concrete injury-in-fact fairly traceable to Defendant's conduct. Defendant submits this evidence solely in support of its factual Rule 12(b)(1) challenge to Plaintiff's standing. Accordingly, consideration of the evidence does not convert Defendant's motion into one for summary judgment.

### B. Plaintiff Does Not Plausibly Allege a Concrete and Particularized Injury.

A complaint's allegations are ordinarily accepted as true at the pleading stage. But that rule does not require the Court to accept legal conclusions or assertions that are contradicted by technical evidence. In deciding a Rule 12(b)(1) motion, "the district court may receive evidence, outside the complaint, on whether the plaintiff meets the standing requirements of Article III." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 277 (7th Cir. 2020). "The law is clear that when considering a motion that launches a factual attack against jurisdiction, 'the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists.'" *Apex Digit. Inc.*, 572 F.3d at 444 (quoting *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008)).

*i. The First Amended Complaint Does Not Plausibly Allege a Concrete Denial of Access.*

Article III requires Plaintiff to allege a concrete and individualized injury, not merely the existence of conditions that might affect website accessibility in the abstract. Yet the FAC repeatedly relies on assertions that the Website is "inaccessible," provides "no meaningful accommodations," makes transactions "impossible," and "essentially prevent[s]" visually impaired users from purchasing any item. FAC ¶¶ 5, 7, 37–38. Those characterizations are legal conclusions or general descriptions, and the Court need not accept them without supporting facts.

Plaintiff's encounter-specific allegations identify two conditions: he allegedly was required to tab through duplicated links, and his screen reader allegedly did not announce a confirmation after he added an item to his cart. FAC ¶¶ 35(c), 35(e), 41. But the FAC does not allege that the duplicated links prevented him from reaching the product page, selecting the product, or adding it to his cart. To the contrary, Plaintiff alleges that he successfully located the product and added it to the cart. *Id.* ¶ 41. Nor does Plaintiff allege what JAWS announced after he activated the add-to-cart control, whether he attempted to inspect or open the cart, whether the cart contained the selected item, whether he attempted to proceed to checkout, or why uncertainty concerning an audible confirmation prevented him from taking any further step. *Id.* A technical condition is not itself a concrete injury; Plaintiff must plausibly connect that condition to an actual denial of access. Even when drawing all reasonable inferences in the Plaintiff's favor, the Court cannot draw a nexus for the Plaintiff where he has failed to do so. *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019).

*Plaintiff's FAC Is Internally Inconsistent.*

The FAC must present a plausible account that "holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). It does not. Plaintiff repeatedly alleges that the Website provides

no meaningful accommodations, making it impossible for a user to navigate the Website without a mouse, and essentially prevents blind customers from purchasing any item. FAC ¶¶ 5, 7, 37–38. Yet Plaintiff's own allegations show that he found the Website, reviewed customer information, located the exact product he wanted, and added that product to his cart using JAWS. *Id.* ¶ 41. Thus, the pleaded facts do not support the FAC's categorical conclusion that the Website required a mouse or made a purchase impossible.

The FAC also attributes injuries to barriers that Plaintiff's own narrative shows he never encountered. It alleges that inadequately labeled form fields prevented Plaintiff from entering personal and financial information after completing a purchase. FAC ¶ 34. But Plaintiff elsewhere alleges that his visit ended earlier—after he added an item to his cart and did not hear an audible confirmation. *Id.* at ¶ 41. He therefore could not have encountered a form field, because the Website does not present customers with a form field until after the checkout button is clicked. **Exhibit 3**. Plaintiff's narrative describes a sequence of events that could not have occurred.

*ii. The Boilerplate Nature of Plaintiff's Complaints Undermines Plausibility.*

The absence of individualized facts is especially significant because Plaintiff has filed at least sixteen nearly identical complaints in this District, each describing materially different websites through substantially interchangeable allegations of total inaccessibility. **Exhibit 1.** Defendant requests that this Court take judicial notice of the sixteen complaints, which are matters of public record. *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (citations omitted) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss….And [t]aking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.") (citations omitted). The repetition of the same categorical narrative across dissimilar websites undermines the plausibility that the allegations

describe Plaintiff's personal experience with Defendant's Website.

And not only are all of Plaintiff's complaints nearly identical to each other, but they are also nearly identical to the hundreds of complaints filed throughout this district by Plaintiff's counsel's firm. **Exhibit 4**. Defendant does not challenge the legitimacy of tester litigation as a category. A tester may have standing when she personally suffers the concrete injury alleged and faces a real threat of recurrence. But tester status does not insulate jurisdictional allegations from ordinary plausibility review. The concern here is narrower: Plaintiff's complaints do not merely share legal theories; they repeatedly describe materially different websites through substantially interchangeable factual allegations of the same purported encounter and injury. That pattern undermines the plausibility that the allegations in this case reflect Plaintiff's own individualized experience with Defendant's Website rather than a standardized pleading template.

In *Henry v. Omoi, Inc.*, No. 25-CV-3151, 2026 WL 636799, at *2 (N.D. Ill. Mar. 6, 2026), this Court was faced with one of Plaintiff's law firm's complaints. It was nearly identical to the FAC before this Court. The *Henry* court described the plaintiff's complaints as "a glorified copy-and-paste operation. Henry simply takes the last complaint, adds a sprinkling of facts about the latest defendant, and launches the new case." *Id.* As the court noted, "That's a lot of shopping gone wrong." *Id.* Indeed, Mr. Booker's complaints represent a lot of shopping gone wrong. Within a few months, Booker allegedly experienced failed transactions involving knives, an inflatable kayak, women's jewelry, and other unrelated products, but each encounter produced materially the same complaint and the same categorical injury.

The uniformity extends far beyond ordinary reuse of legal standards. Each complaint is twenty pages long and follows an identical paragraph-by-paragraph architecture. **Exhibit 1; Exhibit 4.** The structure of these complaints is arranged in a sequence that broadly tracks WCAG's

organizational structure, suggesting that the allegations were derived from a checklist, rather than narrated in the order Plaintiff allegedly encountered them. Paragraph 5 of every complaint alleges that the defendant's website contains "significant access barriers," makes completing a transaction "impossible," and excludes visually impaired users. Likewise, Paragraph 7 alleges that the defendant chose an "exclusively visual interface" providing "no meaningful accommodations" to screen-reader users. Paragraph 10 substitutes only a generalized product category into the same allegation that Plaintiff intended to make an online purchase but was denied an equivalent shopping experience. Paragraphs 32 through 38 then recite a list of technical accessibility concepts, followed by the same conclusions that visually impaired users are "essentially prevented from purchasing any items" and that the website requires mouse-only operation. Finally, paragraphs 40 and 41 insert a short product narrative and the same conditional assertion that Plaintiff intends to return once the alleged barriers are corrected. The FAC merely shuffles this same material around.

Defendant does not contend that common legal language or tester litigation is inherently improper. The significance lies in the repetition of purportedly factual allegations that should arise from Plaintiff's personal interaction with each website. The complaints attribute the same total denial of access, the same mouse-only operation, and substantially the same future intent to return to unrelated websites selling fundamentally different goods. That pattern makes the missing individualized details in this case especially consequential and undermines the plausibility that the Complaint describes Plaintiff's actual encounter with Defendant's Website rather than the application of a standardized pleading template.

As the *Henry* court noted, this matters because "The cases often settle, relatively quickly. It is worth pausing to ask why. Lawsuits impose costs on defendants. All too often, it is cheaper to settle a case — even if it is meritless — than to fight it." 2026 WL 636799, at *2. "If litigation

costs are driving the settlements, then the settlements feel extortionate." *Id.* The *Henry* court recognized a scenario that is becoming all too common within this District. Defendants like Dollar Aisle are faced with a generalized, template complaint, alleging violations of WCAG guidelines that are not imposed by law upon them, and must face a difficult choice: whether to expend significant resources in litigation or a five-figure settlement. Because Title III does not provide for monetary damages, this settlement money represents a significant windfall for plaintiffs' attorneys, who demand exorbitant fees after filing the same complaint with minimal customization over and over. This does not reflect the purpose of the ADA. Plaintiff must do more to establish standing.

### C. Defendant Factually Controverts Plaintiff's Alleged Injury.

Defendant separately mounts a factual challenge to Plaintiff's standing. In resolving a factual Rule 12(b)(1) challenge, the Court may consider evidence outside the pleadings. *Bazile*, 983 F.3d at 277. The Complaint's jurisdictional allegations are not entitled to a presumption of truth, and Plaintiff bears the burden of establishing the facts necessary for standing. *Apex Digit., Inc.*, 572 F.3d at 444. "If the facts place the district court on notice that the jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth." *Id.* The evidence is offered solely to controvert the jurisdictional facts underlying Plaintiff's alleged injury and does not convert the motion into one for summary judgment. *See id.* at 443; *see also Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).

Here, the facts place this Court on notice that the jurisdictional allegations are false; thus, this Court is duty-bound to demand proof of their truth. Defendant's technical logs demonstrate that no visitor from the entire state of Illinois viewed the Smart Solar LED lights on March 24, 2026. **Exhibit 2**. No one from Kane County, Illinois, visited any page on the website on that day at all. **Exhibit 3**. Thus, Plaintiff's narrative is not plausible. Because Defendant has demonstrated evidence that the jurisdictional allegations are false, Plaintiff must do more to achieve his burden

of standing. Plaintiff has been presented with multiple opportunities to cure this deficiency and was made aware on multiple occasions of this technical evidence. Plaintiff's response was to amend his Complaint without addressing this discrepancy at all. Accordingly, Plaintiff's Complaint should be dismissed under 12(b)(1).

### D. Plaintiff's Emotional Distress Allegations Do Not Allege a Concrete and Particularized Injury-In-Fact

A particularized injury is one that "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (citation omitted). "To be 'concrete,' the asserted injury must be 'real,' and not 'abstract.'" *Id.* at 340.

Plaintiff's allegations of humiliation, frustration, embarrassment, anxiety, and similar emotional reactions are not particularized. As a result, they do not establish Article III injury. The Seventh Circuit has made clear that not all "indignation" harms are sufficient to confer standing and has distinguished between two categories of harm in discrimination cases. *Carello v. Aurora Policeman Credit Union*, 930 F.3d 830, 834 (7th Cir. 2019). *Carello's* reasoning forecloses Plaintiff's attempt to rely on abstract dignitary harm because *Carello* distinguished between a plaintiff who is "personally denied equal treatment" and one who alleges only "abstract stigmatic injury" arising from awareness of supposed discrimination. 930 F.3d at 834. Here, the FAC offers only a single alleged visit to a nationwide retail website and conclusory assertions that Plaintiff wished to buy a product and will return sometime in the future. FAC ¶¶ 41-42. The remaining alleged injuries are subjective feelings resulting from encountering asserted noncompliance. These are precisely the abstract, stigmatic reactions that *Carello* forecloses as a basis for Article III injury. They are subjective responses to encountering alleged noncompliance, not concrete harm flowing from a personal denial of equal access to Dollar Aisle's goods or services.

This point operates independently of Defendant's factual challenge to the alleged website

visit. Whether or not the alleged interaction occurred, the emotional distress allegations in ¶ 50 do not constitute a cognizable Article III injury under *Carello*. And because the only remaining alleged injury—Plaintiff's claimed inability to complete a transaction—is directly contradicted by Defendant's contemporaneous technical records, the FAC is left without a concrete and particularized injury sufficient to confer standing.

### E. Plaintiff Has Not Alleged a Credible Threat of Future Injury.

Past exposure to allegedly unlawful conduct does not establish standing for injunctive relief absent a real and immediate threat of future injury. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). A plaintiff's professed intent to return is insufficient unless supported by concrete facts showing that a future encounter is likely rather than a "'some day' intention[]." Id. (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)).

The FAC alleges only that Plaintiff intends to revisit the Website "immediately upon Defendant correcting the access barriers." FAC ¶ 42. That assertion is conditional and conclusory. Unlike in cases such as *Kindle v. Fifth Third Bank*, No. 1:14 CV 6502, 2015 WL 5159890, at *2 (N.D. Ill. Sept. 1, 2015), Plaintiff alleges no prior purchase from Defendant. He alleges no history of repeated visits to the Website, no concrete plan to return, and no effort to contact Defendant for assistance. His generalized interest in purchasing outdoor lights at some unspecified future time does not establish an imminent injury. Nor can Plaintiff establish standing by conditioning his return on Defendant first providing the very relief sought in this action. Because the FAC alleges no credible plan to revisit the Website while the challenged conditions remain, it fails to plead a real and immediate threat of future harm. The claim for injunctive relief should therefore be dismissed for lack of standing.

## II. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO 12(B)(6) BECAUSE THE ADA DOES NOT APPLY TO STANDALONE WEBSITES

Plaintiff's FAC independently fails to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6) because this Court has already held that the ADA does not apply to standalone websites because a website does not fall within the statutory definition of a "public accommodation." *Henry v. Omoi, Inc.*, No. 25-CV-3151, 2026 WL 636799, at *3 (N.D. Ill. Mar. 6, 2026).

Although the Seventh Circuit has tangentially addressed website-related ADA claims in *Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001), and *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999), neither involved a retailer operating only a standalone website. *Henry* is the only decision within this Circuit to address that precise circumstance, involving a substantially similar complaint to the one at issue here, and it held that a standalone website is not a place of public accommodation under Title III. 2026 WL 636799, at *3.

## CONCLUSION

For the reasons stated, Defendant Dollar Aisle, LLC respectfully requests this Court dismiss Plaintiff's FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and grant such other and further relief as this Court deems just and proper.

.

Dated: July 31, 2026

/s/ Amanda Igra
Amanda Igra
Revision Legal, PLLC
444 Cass Street, Suite D
Traverse City, MI 49684
amanda.igra@revisionlegal.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date below, the foregoing Brief in Support of Motion to Dismiss was filed with the Court via the Court's ECF system

Dated: July 31, 2026

/s/ Amanda Igra
Amanda Igra
Revision Legal, PLLC
444 Cass Street, Suite D
Traverse City, MI 49684
amanda.igra@revisionlegal.com