UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTRELL DESAMONTA BOOKER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>DOLLAR AISLE, LLC,<br><br>Defendant. | Civil Case No. 1:26-cv-04319<br><br>Hon. Charles P. Kocoros |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Martrell Desamonta Booker ("Mr. Booker" or "Plaintiff"), by and through undersigned counsel, respectfully submits this Memorandum in Opposition to Defendant Dollar Aisle, LLC's ("Defendant" or "Dollar Aisle") Motion to Dismiss the First Amended Complaint ("FAC") [ECF No. 14 (the "Motion" or "Mot."); ECF No. 15 (the "Brief" or "Br.")]. Defendant's Motion should be denied.

## INTRODUCTION

Defendant's Motion rests on three propositions, each of which fails. First, Defendant argues that Mr. Booker's March 24, 2026 visit to *www.ledmyplace.com* "never happened" because a Microsoft Clarity analytics dashboard, filtered by Defendant's founder, did not return a session he could attribute to Mr. Booker. But Mr. Booker attests under penalty of perjury that he visited the Website that day using JAWS, encountered specific barriers, and eventually abandoned his purchase; he returned on July 28, 2026, encountered many of the same barriers and several new ones, and again could not complete his purchase. Declaration of Martrell Desamonta Booker ("Booker Decl."), Ex. A ¶¶ 8-16. An aggregate page-visit report that depends entirely on whether

Clarity captured and correctly geolocated his session cannot carry Defendant's burden of proving that Mr. Booker was never there.

Second, Defendant asks the Court to disbelieve Mr. Booker because he and his counsel have filed other accessibility suits. A plaintiff who personally encounters discrimination has standing regardless of his motive for the encounter. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013), and judges of this District have rejected the serial-filer inference in terms. Third, Defendant contends that a website can never be a "place of public accommodation." That position contradicts *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999), and *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001), which district courts throughout this Circuit have followed; the lone contrary decision Defendant cites was issued by a different judge in an order declining a consent decree and, by Defendant's own quotation, says only that a website "does not appear" to fall within the statute

**<u>STATEMENT OF FACTS</u>**

Mr. Booker is legally visually impaired and cannot read a computer screen; he accesses the internet with the JAWS screen reader, which he has used proficiently for years to shop online. Booker Decl. ¶¶ 3-5; FAC ¶¶ 2, 19. Dollar Aisle owns and operates *www.ledmyplace.com* (the "Website"), through which it sells lighting products to the public, including consumers in Illinois. Booker Decl. ¶ 6; FAC ¶¶ 20-21, 27-29; Decl. of Rahul Anand ("Anand Decl."), ECF No. 15-3, ¶ 2.

On or about March 24, 2026, Mr. Booker visited the Website from his personal computer using JAWS with the intent to purchase the "Smart Solar Outdoor LED Wall Lights" (the "Product"). FAC ¶ 41; Booker Decl. ¶¶ 7-9 (referring to the Product by the shorthand "Smart Solar

LED Wall Lights"). He encountered specific barriers, including, link text that did not match the title of the page it opened; a carousel with no navigation controls; redundant links leading to the same destination; a dialog that did not receive keyboard focus when opened, and could not be operated from the keyboard; and; an add-to-cart confirmation that JAWS did not announce, leaving him no way to know whether the Product had been added. FAC ¶ 35(a)-(e); Booker Decl. ¶ 10(a)-(e). After nearly ten minutes, he abandoned the attempt. Booker Decl. ¶ 11. He felt frustrated, excluded, and treated as a second-class customer. *Id.* ¶ 12.

On or about July 28, 2026, Mr. Booker returned to the Website, again using JAWS, still intending to buy the Product and hoping Defendant had fixed the problems. *Id.* ¶¶ 13-14. Some of the March barriers persisted, and he encountered new ones, including identical alternative text on product images; interactive elements that did not receive keyboard focus; sub-menus that could not be reached by keyboard, and a cart value that was not announced. *Id.* ¶ 15. He was again unable to complete the purchase. *Id.* ¶ 16. He still wants the Product, intends to return in the coming months, and will complete his purchase if the Website is remediated; he is deterred only because, based on two visits, he has every reason to believe the barriers remain. *Id.* ¶¶ 17-19.

Defendant submits a two-page declaration from its founder stating that, after applying Clarity's "location and page-visit filters," he "was unable to identify" a session from Kane County on March 24, 2026, or an Illinois session visiting the Product page. Anand Decl. ¶¶ 9-10. The accompanying screenshots are an aggregate "Page visits" list of URLs visited by users Clarity attributed to Illinois that day (ECF No. 15-2 at 8); they are not session-level records, do not break out county, and reflect nothing about data-capture rates, or how Clarity assigns location.

## LEGAL STANDARD

On a facial Rule 12(b)(1) challenge, the Court accepts well-pleaded allegations as true and draws reasonable inferences in favor of the plaintiff. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). On a factual challenge, the Court may consider evidence outside the pleadings, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009), and the plaintiff may respond with evidence of his own, as Mr. Booker has. The movant must put forward evidence that the jurisdictional allegation "probably … false," *id.*; conclusory or unreliable material does not shift the burden. Under Rule 12(b)(6), the complaint need only "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). See *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403-05 (7th Cir. 2010) (reversing dismissal of discrimination claim; the "story that holds together" standard Defendant invokes, Br. 8, is a lenient one).

## ARGUMENT

### I. DEFENDANT'S PRINCIPAL AUTHORITIES DO NOT SUPPORT ITS MOTION.

At the outset, the Court should note that the Seventh Circuit decisions on which the Motion principally rests do not say what Defendant says they say. *Carello* recognized that being "personally denied equal treatment" is a cognizable injury and denied standing because the plaintiff was statutorily ineligible to use the defendant's services, 930 F.3d at 833-35 (Part II.a, infra). Scherr found standing on a deterrence theory and applied the ADA's "futile gesture" provision, 703 F.3d at 1074-75, which is the very argument Defendant says is foreclosed (Part II.c). *Swanson* reversed the dismissal of a discrimination claim, 614 F.3d at 403–05. *Doe* and *Morgan,* dismissed as "tangential," state that Title III reaches a "Web site" and sales "over the Internet," 179 F.3d at 559; 268 F.3d at 459 (Part III.a). Kindle, cited for a "prior purchase" requirement, found standing for a bank customer who might return (Part II.c). And *Henry*,

described as a holding of "this Court," was decided by a different judge in an order declining a consent decree (Part III.a). Each is addressed below.

## II. MR. BOOKER HAS ARTICLE III STANDING.

### a. The FAC Plausibly Alleges a Concrete and Particularized Injury.

Article III requires an injury that is "concrete and particularized" and "actual or imminent." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Being personally denied the full and equal enjoyment of goods and services because of a disability is precisely such an injury. *Carello v. Aurora Policeman Credit Union*, 930 F.3d 830 (7th Cir. 2019) the case Defendant relies on, recognizes that injury: the court treated the "dignitary harm" of being "personally denied equal treatment" as cognizable, and the plaintiff lost only because a statutory membership restriction made him ineligible ever to use the credit union's services, so the harm was not particularized to him. *Id.* at 833-35. No eligibility bar exists here. Mr. Booker is a member of the public to whom Dollar Aisle sells lights; he personally attempted to buy one and was personally prevented from doing so.

Defendant's contention that the FAC identifies "two conditions" and no resulting denial of access (Br. 8) is incorrect. The FAC and the Booker Declaration identify at least five specific barriers encountered on March 24, 2026, FAC ¶ 35(a)-(e); Booker Decl. ¶ 10, and the consequence: Mr. Booker could not obtain information available to sighted users and could not complete his purchase. Booker Decl. ¶ 11. Defendant's assertion that Mr. Booker "successfully located the product and added it to the cart" (Br. 8) misreads the pleading. The FAC alleges that Mr. Booker activated the add-to-cart control "[i]n an attempt to add an item to the cart" and that "the confirmation message was not announced." FAC ¶ 35(e); *see id.* ¶ 41 (no confirmation, creating "significant uncertainty as to whether the selection had been successful, preventing him from

proceeding further"); Booker Decl. ¶ 10(e). That is a denial of access, not a "technical condition." Judge Chang recently held that a complaint pleading "concrete alleged obstacles after a concrete attempt to purchase a product from the Defendant's website" "more than adequately allege[s] standing." *Vaughn v. Cozy Corner Patios*, LLC, No. 1:26-cv-03410, ECF No. 15 (N.D. Ill. May 20, 2026) (Chang, J.) (minute entry). Indeed, Defendant's own motion cannot decide whether Mr. Booker succeeded in adding the Product to his cart (Br. 8-9) or never visited the site at all (Br. 6-7, 12); it cannot have it both ways.

Nor is the FAC "internally inconsistent"; locating a product page and then being stymied at the cart is what inaccessibility looks like in practice. As to FAC ¶ 34, that paragraph alleges that the Website "lacks prompting information and accommodations" for online forms and that, "[d]ue to lack of adequate labeling," blind customers cannot enter their information with confidence. It is a description of the Website's forms, not a narrative of March 24; it does not say that Mr. Booker reached checkout, and Defendant's paraphrase that ¶ 34 alleges form-field barriers "after completing a purchase" (Br. 9) adds words that are not there. The Anand Declaration's point that forms appear only at checkout (Anand Decl. ¶¶ 7-8) therefore rebuts an allegation the FAC does not make.

Finally, Defendant's attack on the emotional-distress allegations (Br. 13-14, citing FAC ¶ 50; the allegations appear at ¶ 51) answers a claim Plaintiff has not made. Plaintiff does not seek damages for emotional distress or any other injury. The FAC pleads two counts: violation of Title III and declaratory relief, and its Prayer for Relief requests injunctive and declaratory relief, class certification, interest, costs, and fees; it requests no damages. FAC ¶¶ 58-75 & Prayer (a)-(g). Defendant itself acknowledges that "Title III does not provide for monetary damages." Br. 12. The allegations in ¶ 51 that Mr. Booker experienced frustration, humiliation, and exclusion are

therefore not a freestanding theory of injury on which standing depends; they describe the lived consequence of the concrete injury that does confer standing, being personally denied equal access to Defendant's goods, and they explain why he is deterred from returning, which is the relevant inquiry for injunctive relief under *Scherr*, 703 F.3d at 1074-75. Defendant's Carello argument, even if accepted in full, would leave the access-denial injury untouched. (The reference to "compensatory damages" in FAC ¶ 11 is a drafting vestige; Plaintiff will remove it in any amended pleading.)

**b. Defendant's "Factual" Challenge Fails on Its Own Evidence and Is Rebutted by Sworn Testimony.**

A factual challenge succeeds only if the movant's evidence places the Court "on notice that the jurisdictional allegation probably is false..." *Apex Digital*, 572 F.3d at 444. Defendant's Clarity evidence does not come close.

**i. The evidence lacks foundation and is unreliable on its face.**

The only witness is Dollar Aisle's founder, who claims no expertise in Microsoft Clarity, web analytics, or IP geolocation, and who does not explain how Clarity determines a visitor's "location," whether Clarity records every session or only a sample, whether its script loads for users whose browsers or assistive technology block third-party tracking, or whether the account retained complete data for March 24 as of July 30. Anand Decl. ¶¶ 9-10. IP-based geolocation commonly places a user at an internet-service provider's or carrier's hub rather than his actual location, so a Kane County visitor may be attributed to another state and excluded by an "Illinois" filter; and if Clarity's script never loaded or the session was not sampled, the visit would not appear under any filter. Defendant bears the burden of laying a foundation for evidence it asks the Court

to treat as conclusive, and a declarant who does not know these things cannot establish that a visit did not occur.

**ii. The declaration does not say what the Motion says it say.**

Mr. Anand attests only that he "was unable to identify" a Kane County session or an Illinois visit to a product page. Anand Decl. ¶ 9. That is a statement about the limits of his search, not proof of absence. The Motion converts this into the categorical claims that "no session matching Plaintiff's alleged conduct occurred" and that "[n]o one from Kane County, Illinois, visited any page on the website on that day at all." Br. 2, 12. The Exhibit 2 screenshots show dozens of Illinois page visits that day but do not identify any visitor's county (ECF No. 15-2 at 3-8), so they do not corroborate the separate assertion that no session originated in Kane County. The Motion also claims Defendant's records show no one "added that product to their cart" (Br. 2; see also Br. 7 ("add-to-cart event")), but neither the declaration nor the screenshots address add-to-cart events.

**iii. Sworn testimony controverts Defendant's inference.**

Against a founder's inability to find a session in a dashboard, Mr. Booker swears under penalty of perjury that he visited the Website on March 24, 2026, and describes with specificity what he encountered. Booker Decl. ¶¶ 8-12. Where competing evidence creates a genuine dispute over jurisdictional facts, the Court does not simply credit the movant; it may hold an evidentiary hearing or permit jurisdictional discovery. Should the Court find the record insufficient, Plaintiff requests limited jurisdictional discovery into Defendant's Clarity configuration, sampling and retention settings, and raw session data for March 24 and July 28, 2026.

**c. Mr. Booker Plausibly Alleges a Real and Immediate Threat of Future Injury.**

Defendant cites *Scherr* only for the proposition that past exposure does not establish standing for injunctive relief (Br. 14), omitting its holding: an ADA plaintiff who encountered a

barrier at one Marriott hotel had standing to seek injunctive relief against that hotel because she was deterred from returning while the barrier remained, and the ADA provides that a person with a disability need not "engage in a futile gesture" once on notice that a covered entity does not intend to comply. 703 F.3d at 1074-75 (citing 42 U.S.C. § 12188(a)(1)). Defendant's argument that Mr. Booker cannot "condition[] his return on Defendant first providing the very relief sought" (Br. 14) is therefore foreclosed by statute. Nor does it matter that Mr. Booker did not "contact Defendant for assistance" (Br. 4, 14): "[i]t is of no consequence that [the plaintiff] could have called or emailed [the defendant] to complete her purchase," *Walsh*, 716 F. Supp. 3d at 661, and Title III guarantees independent and equal access, not access on whatever alternative terms a merchant prefers.

Defendant's factual premises are also wrong. It asserts that Mr. Booker alleges "no history of repeated visits," and "no concrete plan to return." Br. 14. The FAC alleges that Mr. Booker was denied access "on several separate occasions" and is deterred "on a regular basis" from returning, FAC ¶ 14, and the Booker Declaration confirms that he has visited the Website twice, four months apart, each time to buy the same specific product; he still wants that product; he intends to return "in the coming months"; and he will complete the purchase once the barriers are removed. Booker Decl. ¶¶ 13-19 (the July 28 visit is unrebutted; Plaintiff requests leave to supplement under Rule 15(d) if necessary). That is not a *Lujan* "some day" intention, 504 U.S. at 564; it is a specific, product-focused, twice-demonstrated intent. Two recent decisions of this District confirm the point by contrast. In *Cole v. Kingsmen Premium*, LLC, No. 25-cv-10905, ECF No. 23, slip op. at 4-7 (N.D. Ill. July 23, 2026) (Rowland, J.), and *Bennett v. Sweet Candy Co.*, 2026 WL 1905954, at *2 (N.D. Ill. July 2, 2026), the court dismissed: in *Kingsmen*, with leave to amend, complaints alleging a single visit and describing the products only generically: "generic descriptors applicable to

countless other websites that sell grooming products," *Kingsmen*, slip op. at 5, and "generic descriptors applicable to many thousands of websites that sell candy," *Sweet Candy*, 2026 WL 1905954, at *2 (as quoted in Kingsmen, slip op. at 5). Here, the record shows two visits, a single identified product sought on both, and site-specific reasons for Mr. Booker's interest: the Website's free shipping on orders over $99 and manufacturer's warranty of up to five years. FAC ¶ 42; Booker Decl. ¶¶ 13-19. If the Court finds the FAC's intent allegations insufficiently specific, Plaintiff requests the leave to amend that *Kingsmen* granted. *See* Part IV, *infra*. Defendant's reliance on *Kindle v. Fifth Third Bank*, No. 1:14 CV 6502, 2015 WL 5159890, at *2 (N.D. Ill. Sept. 1, 2015), for the proposition that Plaintiff's lack of a "prior purchase" defeats standing (Br. 14) misdescribes that case. *Kindle* involved no purchase at all; a pro se plaintiff denied use of a bank restroom alleged only that he was a customer, and the court found standing for injunctive relief because it was "possible and perhaps likely that he might return." *Id.* If that inference sufficed in *Kindle,* Mr. Booker's two documented visits and sworn intent to return more than suffice here.

**d. Mr. Booker's Other Lawsuits Are Irrelevant to Standing.**

Much of Defendant's brief (Br. 2-3, 9-12) concerns Mr. Booker's and his counsel's other cases. None of it bears on standing. The Supreme Court held in *Havens Realty* that a "tester" who encounters discrimination has standing notwithstanding that she sought out the encounter for the purpose of testing compliance. 455 U.S. at 373-74. The Seventh Circuit applied that principle to a Title III plaintiff in *Scherr*, 703 F.3d at 1074; *see also Acheson Hotels, LLC v. Laufer*, 601 U.S. 1 (2023) (vacating as moot). Defendant concedes that "[a] tester may have standing when she personally suffers the concrete injury alleged and faces a real threat of recurrence." Br. 10. That is exactly what the FAC and the Booker Declaration establish.

Judges of this District have rejected Defendant's inference in terms. In *Kingsmen*, where the defendant invoked the plaintiff's "37 identical complaints," Judge Rowland answered that "tester status does not deprive a plaintiff of standing," that "it is not uncommon for people to use and attempt to access multiple websites a day," that "it is not implausible that many such websites are inaccessible to visually-impaired persons," and that "the fact that [the plaintiff] has filed similar lawsuits is not relevant to the question of standing." Slip op. at 6 (quoting *Carello*, 930 F.3d at 833). Judge Chang reached the same conclusion in *Cozy Corner*: "Serial filing in and of itself is not necessarily a reason to be skeptical of standing; it could instead be a sign of widespread illegality." ECF No. 15. The court distinguished complaints that "describe only conclusory and vague visits to websites" from one pleading concrete obstacles during a concrete purchase attempt and refused to bifurcate discovery on standing. Id. The *Cozy Corner* plaintiff is the same Kendrick Vaughn whose complaint Defendant attaches as Exhibit 4. ECF No. 15-4 at 2-21.

Judicial notice of other complaints (Br. 9) establishes only that they exist. And the barriers pleaded here (FAC ¶ 35) are not the list pleaded in, for example, *Booker v. Anheuser-Busch* (ECF No. 15-1 at 31–32), which involved an age-verification gate and a missing skip link not alleged here.

## III. THE FAC STATES A CLAIM UNDER TITLE III.

### a. A Retail Website Is a "Place of Public Accommodation" Under Seventh Circuit Law.

Title III prohibits discrimination "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). The statute defines "public accommodation" to include any "sales or rental

establishment." Id. § 12181(7)(E). Dollar Aisle, by its own account, sells lighting products to the public. Mot. ¶ 4.

The Seventh Circuit has twice stated that Title III is not confined to brick-and-mortar structures. In *Doe v. Mutual of Omaha*, Judge Posner explained that the "core meaning" of § 12182(a) is that "the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility (whether in physical space or in electronic space …) that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do." 179 F.3d at 559 (citation omitted) (emphasis added). Two years later, in *Morgan*, the court declined "to interpret 'public accommodation' literally, as denoting a physical site," explaining that "[a]n insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store. The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services." 268 F.3d at 459. In this Circuit, such "considered dictum … provides the best, though not an infallible, guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it." *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994).

District courts throughout this Circuit have followed *Doe* and *Morgan* and held that a commercial website is a place of public accommodation without regard to any physical store. In *Walsh v. Dania Inc.*, 716 F. Supp. 3d 655 (N.D. Ill. 2024), Judge Kendall found "nothing in the text of 42 U.S.C. § 12181(7)" establishing a physical-space limitation, elected "to follow the Seventh Circuit's considered dictum that a place of public accommodation is not limited to physical spaces," and held that it was "of no consequence that [the plaintiff] could have called or emailed [the defendant] to complete her purchase." *Id.* at 659-61. Judge Shah reached the same

result in *Colon v. HY Supplies, Inc., No. 22 CV 5915,* 2023 WL 7666740, at *6 (N.D. Ill. Nov. 15, 2023), holding that "a 'place of public accommodation' does not have to be a physical space." Courts in Indiana and Wisconsin agree. *Wright v. Thread Experiment, LLC*, No. 1:19-cv-01423, 2021 WL 243604, at *3 (S.D. Ind. Jan. 22, 2021) (retail website is a "sales establishment" under § 12181(7)(E) "regardless of whether the website is associated with any physical store"); *McCabe v. Heid Music Co.*, No. 23-CV-1215-JPS, 2024 WL 1174352 (E.D. Wis. Mar. 19, 2024) ("The Seventh Circuit is not among" the circuits requiring a physical space); *Cazares v. Organic Cotton Mart LLC*, No. 25-cv-1213-bhl, 2026 U.S. Dist. LEXIS 157722, at *5 (E.D. Wis. July 16, 2026).

Against this, Defendant offers only *Henry*, which it describes as a case in which "this Court has already held that the ADA does not apply to standalone websites." Br. 15; see also Mot. ¶ 8; Br. 2, 10. That is not accurate. *Henry* was decided by Judge Seeger, not this Court, in an order declining to enter a proposed consent decree on Rule 65(d) grounds; it is not binding here, and its observation that a website "does not appear" to be a place of public accommodation, Mot. ¶ 8, was made without the in-circuit authority collected above. The out-of-circuit decisions *Henry* surveyed are unavailing: *Parker*, *Ford*, and *Weyer* are the decisions the Seventh Circuit had before it in *Morgan* and declined to follow; *Magee* held only that a vending machine is not a "sales establishment," see *Walsh*, 716 F. Supp. 3d at 659-60; and the Eleventh Circuit's decision in *Gil v. Winn-Dixie Stores* was vacated as moot and binds no one. To the extent *Henry* departs from *Doe* and *Morgan*, the Seventh Circuit's statements control.

Further, the Department of Justice has taken the same position since 1996. U.S. Dep't of Justice, Guidance on Web Accessibility and the ADA (Mar. 18, 2022), https://www.ada.gov/resources/web-guidance/; FAC ¶ 15. Reading "sales establishment," 42 U.S.C. § 12181(7)(E), to exclude online retailers would "allow all sales establishments …

operating exclusively online to fully deny access to visually impaired and blind individuals." *Walsh*, 716 F. Supp. 3d at 660-61.

**b. The FAC Does Not Treat WCAG as Binding Law.**

Defendant's suggestion that the FAC merely alleges "technical deviations from nonbinding accessibility guidelines" (Br. 5; see also Br. 12) misdescribes the pleading. The FAC alleges that Mr. Booker was denied full and equal enjoyment of Defendant's goods and services because of his disability, 42 U.S.C. § 12182(a), and that Defendant failed to furnish the auxiliary aids and services necessary to ensure he was not "excluded, denied services, segregated or otherwise treated differently," id. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)-(c). FAC ¶¶ 59–67. Discrimination under Title III does not require intent, *A.H. v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018), and courts in this Circuit have held that pleading specific screen-reader barriers and how they impeded the plaintiff's use of a retail website suffices to allege discrimination. *Walsh*, 716 F. Supp. 3d at 661; *Wright*, 2021 WL 243604, at *3; *McCabe*, 2024 WL 1174352, at *4-5 (incompatibility with screen-reading software satisfies the discrimination element). WCAG is pleaded as the widely accepted benchmark showing that accessibility is readily achievable without fundamental alteration or undue burden, FAC ¶¶ 26, 66, which is a question of fact on which Defendant bears the burden. The Department of Justice points to WCAG as the practical measure of compliance, Guidance on Web Accessibility and the ADA, supra, and courts in this Circuit granting relief in materially identical cases have ordered conformance to it. *See McCabe*, 2024 WL 1174352 (ordering WCAG 2.0 AA conformance); *Cazares*, 2026 U.S. Dist. LEXIS 157722, at *6-9 (ordering compliance within 180 days); Xinyue Hippe v. Cir. City Corp., 2025 U.S. Dist. LEXIS 160440, at *15-16 (E.D. Wis. Aug. 19, 2025).

## IV. ALTERNATIVELY, THE COURT SHOULD GRANT LEAVE TO AMEND OR SUPPLEMENT.

If the Court finds any aspect of the FAC deficient, Plaintiff requests leave to amend under Rule 15(a)(2) and to supplement under Rule 15(d) to plead the facts in the Booker Declaration, including the July 28, 2026 visit, as the court did in *Kingsmen.* Defendant identifies no prejudice, bad faith, or futility.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety or, in the alternative, permit jurisdictional discovery and/or grant leave to amend or supplement the First Amended Complaint.

Dated: August 21, 2026

Respectfully Submitted,

**EQUAL ACCESS LAW GROUP, PLLC**

*/s/ Michael Ohrenberger, Esq.*
Michael Ohrenberger, Esq.
4903 Avenue N,
Brooklyn, NY 11234
Phone: (716) 281-5496
Email: mohrenberger@Ealg.law
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2026, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Michael Ohrenberger, Esq.*
Michael Ohrenberger, Esq.
*Attorneys for Plaintiff*