**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

Martrell Desamonta Booker on behalf of himself and all others similarly situated

Plaintiffs,

v.

Dollar Aisle, LLC,

Defendant

Case No.: 1:26-cv-4319

Hon. Charles P. Kocoras

---

# DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Dollar Aisle, LLC, by and through its attorneys, states as follows for its reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

Plaintiff's Opposition does not cure the defects identified in Defendant's Motion. Instead, Plaintiff relies heavily on a purported second visit to Defendant's website that occurred months after this action was filed and after the complaint was amended. The opposition responds to Defendant's evidence with hypothetical explanations unsupported by the record, and treats broad language in *Doe* and *Morgan* as resolving an issue neither case actually decided. Defendant's Motion should therefore be granted.

## I. Plaintiff Cannot Cure the Standing Defect with Post-Filing Conduct.

Plaintiff's Opposition raises a brand-new allegation: that Plaintiff visited Defendant's website on July 28, 2026 and encountered alleged barriers on the website. Plaintiff emphasizes that his newly alleged July 28 visit is "unrebutted." That is unsurprising: the purported visit occurred after the filing of the FAC and is disclosed for the first time in Plaintiff's opposition

papers. Defendant could not have addressed an event in its opening brief that Plaintiff had neither pleaded nor previously disclosed. The allegations involving this alleged visit occurred after Plaintiff's Complaint was filed on April 17, 2026, and after the Complaint was amended and filed on July 17, 2026. This attempt to manufacture specificity is improper, and the allegations concerning the July 28 visit should not be considered.

Article III standing must exist when the action is commenced. *Pennell v. Glob. Tr. Mgmt.*, LLC, 990 F.3d 1041, 1045 (7th Cir. 2021). "[A] plaintiff must establish standing at the time suit is filed and cannot manufacture standing afterwards." *Pollack v. U.S. DOJ*, 577 F.3d 736, 743 n.2 (7th Cir. 2009). In *Pollack*, the plaintiff tried to rely on a visit to a park that occurred after he filed suit. *Id.* The Seventh Circuit refused to let that later visit establish standing, holding that the plaintiff's claims must be specific and must establish a concrete injury at the time of the challenge. *Id.* at 743. And in *Perry v. Village of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999), the plaintiff took actions after filing in an effort to establish the factual circumstances necessary for filing. The Seventh Circuit held that it was not enough for the plaintiff to "attempt to satisfy the requirements of standing as the case progresses. The requirements of standing must be satisfied from the outset." *Id.*

Here, Plaintiff's alleged July 28 visit is an improper effort to satisfy the requirements of standing as the case progresses. These allegations are improperly raised in Plaintiff's opposition brief and not contained in either the Complaint or the First Amended Complaint. Plaintiff has had ample time to satisfy his burden of standing, including an opportunity to amend his Complaint. Plaintiff was even able to amend his complaint after the benefit of multiple challenges by Defendant's counsel via email and in the status hearing. Plaintiff should not be permitted to amend

his complaint once again in the hopes that a jurisdictional allegation sticks. The Court should grant Defendant's Motion for lack of subject-matter jurisdiction.

Plaintiff's argument that he satisfies the standard set forth in *Kindle v. Fifth Third Bank,* No. 1:14 CV 6502, 2015 WL 5159890, at *2 (N.D. Ill. Sept. 1, 2015), is disingenuous and misleading. By that logic, any plaintiff within this district could file a lawsuit without any concrete injury at the time of filing, with the ability to manufacture instances of injury as the suit progresses. This runs contrary to the Rules of Civil Procedure, controlling case law, and collectively held notions of justice. Plaintiff must have standing at the time of filing: this is an uncontroversial, well-established principle. Plaintiff's attempt to slip in a second website visit and characterize it as "unrebutted" is an attempt to mislead the Court.

Although Plaintiff invokes Rule 15(d), this does not alter the Seventh Circuit's rule that Article III standing must exist when the action is commenced. Any attempt to use facts from Plaintiff's alleged July 28 visit to establish standing is improper—standing must exist when the action is commenced. Allowing Plaintiff leave to amend his complaint once again will not cure this jurisdictional defect.

## II. Plaintiff's Declaration Does Not Rebut Defendant's Objective Evidence.

Plaintiff is permitted to respond to Defendant's factual Rule 12(b)(1) challenge with evidence outside the pleadings, but the submission of a declaration does not restore the presumption of truth that applies to a facial challenge. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009), makes clear that where a defendant mounts a factual jurisdictional challenge, the Court may look beyond the pleadings and evaluate the evidence for itself. Once the defendant produces evidence calling standing into question, "the presumption of

correctness that we accord to a complaint's allegations falls away," and the plaintiff bears the burden of coming forward with competent proof that standing exists. *Id.* at 445.

Here, Booker's declaration does little more than place under oath the same account already alleged in the First Amended Complaint. Booker again states that he is visually impaired, uses JAWS, visited Defendant's website on March 24, 2026, intended to purchase the Smart Solar LED Wall Lights, encountered accessibility barriers, and was unable to complete the purchase. Those statements may reiterate Plaintiff's version of events, but they do not address the factual discrepancy Defendant's evidence identifies: Defendant's contemporaneous website analytics do not reveal a session corresponding to the visit Plaintiff alleges.

The distinction matters. Plaintiff characterizes the declaration as evidence that "controverts" Defendant's factual showing because Booker "describes with specificity what he encountered." Opp. at 8. But specificity concerning the accessibility barriers Plaintiff claims to have encountered is not evidence explaining why Defendant's objective records fail to reflect the alleged visit. The declaration supplies no facts regarding the technical circumstances of the March 24 session that could account for that absence. Booker does not identify the browser he used, the approximate time of his visit, his IP address or Internet service provider, whether he used a VPN, whether he employed an ad blocker or privacy extension, whether tracking or JavaScript was disabled, his cookie or consent settings, or any other circumstance that might explain why the alleged session would not appear in Defendant's records. Instead, he simply repeats that the visit occurred.

Plaintiff's counsel attempts to fill that evidentiary gap with hypotheses. The Opposition suggests that Clarity may not record every session, that its script may fail to load, that a browser or "assistive technology" might block third-party tracking, that Clarity may inaccurately geolocate

a visitor, or that Defendant's account may not have retained complete data. Opp. at 7–8. But none of those propositions appears in Booker's declaration, and Plaintiff submits no declaration from a technical expert, Microsoft, or any other witness establishing that any such circumstance actually existed during Booker's purported March 24 visit. The Opposition thus identifies conceivable explanations for the absence of a matching session without supplying evidence that any of those explanations applies here. That is not enough.

Indeed, Booker's declaration states that he has used JAWS for several years, regularly uses it to shop online, and has successfully completed purchases on other retail websites using the "same technology and the same device configuration." Yet the declaration nowhere states that JAWS, or any feature of Booker's actual device configuration, interferes with website analytics or prevents Clarity from recording a session. Plaintiff therefore cannot convert counsel's speculation about what "assistive technology" might theoretically do into evidence concerning what Booker's JAWS configuration actually did on March 24.

The significance of Plaintiff's declaration is therefore limited. Once the newly asserted July 28 visit is set aside for the reasons discussed above, the declaration principally transforms allegations already contained in the FAC into sworn testimony. What it does not do is supply evidence capable of reconciling Plaintiff's account with the objective analytics Defendant submitted. Plaintiff's sworn assertion that he visited the Website does not, by itself, establish that Defendant's contrary evidence is unreliable, and unsupported possibilities concerning how Clarity might operate do not rebut Defendant's factual showing.

## III. Plaintiff Mischaracterizes Defendant's Reliance on the Boilerplate Complaints.

Plaintiff also mischaracterizes Defendant's reliance on the substantially identical complaints filed by Plaintiff and his counsel. Defendant did not argue that Booker lacks standing

because he is a tester, because he has filed other ADA actions, or because his counsel represents other accessibility plaintiffs. To the contrary, Defendant expressly acknowledged that "[a] tester may have standing when she personally suffers the concrete injury alleged and faces a real threat of recurrence," and stated that it "does not challenge the legitimacy of tester litigation as a category." Br. at 9. Defendant's argument was considerably narrower: the repeated use of substantially interchangeable factual allegations to describe purported encounters with materially different websites bears on whether the allegations in this particular FAC plausibly describe Booker's individualized experience.

Nor did Defendant ask the Court to draw that inference from the existence of other lawsuits alone. The boilerplate allegations were one component of a broader plausibility challenge. The FAC contains internal inconsistencies concerning what Booker was allegedly able to accomplish and what barriers he could actually have encountered, and Defendant separately submitted objective technical evidence inconsistent with the alleged March 24 visit. Against that backdrop, the fact that materially different websites repeatedly generate substantially interchangeable accounts of the same purported encounter is relevant not because Booker has filed numerous lawsuits, but because it further undermines the inference that the allegations here reflect his actual, individualized experience.

Plaintiff therefore answers an argument Defendant did not make. *Havens*, *Carello*, and the cases Plaintiff cites concerning tester status establish that serial litigation does not, standing alone, defeat Article III standing. Defendant does not contend otherwise. They do not require the Court to disregard the pleading history when assessing the plausibility of the particularized factual allegations before it—especially where those allegations are also internally inconsistent and contradicted by Defendant's evidence.

## IV. Plaintiff Misreads *Doe* and *Morgan*.

Plaintiff contends that Defendant's position "contradicts" *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999), and *Morgan v. Joint Administration Board*, 268 F.3d 456 (7th Cir. 2001), because those decisions purportedly establish that a standalone retail website is itself a "place of public accommodation" under Title III. Opp. at 1, 12–13. Neither case decided that question.

Plaintiff's reliance on *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999), is incomplete. Although *Doe* explained that Title III protects disabled customers' ability to enter—or electronically access—a public-facing facility and use it on the same terms as nondisabled customers, the court expressly rejected the proposition that the ADA requires a business to configure every product or service so that it is equally useful to disabled and nondisabled consumers. *Id.* at 559–60. The court explained, for example, that a bookstore need not stock Braille books, a furniture store need not stock wheelchairs, and a movie theater need not provide a running sign-language translation of every film. *Id.* at 560. Its reasoning was straightforward: Title III regulates discriminatory denial of access, not the substantive content of every product or service, and courts should not be forced to make "standardless decisions" about how businesses must redesign what they offer. *Id.* To require that a website maintain strict compliance with WCAG would be the standardless decision the Seventh Circuit has rejected.

Plaintiff invokes *Doe* for the proposition that a website may fall within Title III's reach, but ignores the equally important limitation *Doe* places on that principle. The relevant question is not whether every Website feature functions identically for a screen-reader user or satisfies every WCAG criterion. It is whether the particular condition Plaintiff encountered actually denied him equal access to Defendant's goods or services. Where, as here, Plaintiff alleges that he located the

Website, learned about Defendant's products, reviewed customer feedback, navigated product pages, interacted with controls, and attempted to add an item to his cart, *Doe* does not support treating every remaining technical imperfection as itself an actionable denial of access.

*Morgan* likewise did not involve website accessibility. It concerned disabled former employees challenging the terms of a privately negotiated retirement plan. 268 F.3d at 457–58. In addressing the plaintiffs' alternative Title III theory, the Seventh Circuit rejected the defendant's contention that "public accommodation" must invariably denote a physical site. The court explained that an insurance company could no more refuse to sell a policy to a disabled person "over the Internet" than a furniture store could refuse to sell to a disabled customer who entered the store, because "[t]he site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services." *Id.* at 459.

That proposition does not answer the question presented here. Saying that a covered seller cannot avoid Title III's nondiscrimination mandate merely because a transaction occurs over the Internet is not the same as holding that the Internet website through which the transaction occurs independently constitutes one of the places of public accommodation Congress enumerated in § 12181(7). *Morgan* did not hold that a website is a "sales or rental establishment" under § 12181(7)(E), nor did it undertake any analysis of whether a standalone website fits within that—or any other—statutory category. Indeed, the Title III claim in *Morgan* ultimately failed because the retirement plan was not offered to the public: it was a "private deal, not a public offering." 268 F.3d at 459. Plaintiff therefore conflates two distinct propositions: whether Title III discrimination may occur in a transaction conducted electronically, and whether the electronic medium itself constitutes a statutory place of public accommodation. *Doe* and *Morgan* speak to the former. Neither squarely decided the latter.

## V. The FAC Still Fails to State a Title III Claim.

### A. Plaintiff Does Not Meaningfully Address *Henry's* Statutory Analysis.

Plaintiff's response to *Henry* largely attacks its procedural posture and precedential status rather than its reasoning. Plaintiff emphasizes that *Henry* was decided by Judge Seeger, arose from an order declining to enter a proposed consent decree, and stated only that a website "does not appear" to constitute a place of public accommodation. Opp. at 13. But none of those observations answers *Henry*'s statutory analysis. Plaintiff does not explain why a standalone website falls within any of the categories Congress enumerated in § 12181(7), including a "sales or rental establishment" under § 12181(7)(E). Instead, Plaintiff principally asserts that *Henry* conflicts with *Doe* and *Morgan*. As explained above, however, neither case decided that antecedent statutory question.

### B. *Walsh* and *Colon* Do Not Establish That the Seventh Circuit Has Resolved the Standalone-Website Question.

Plaintiff next relies on *Walsh v. Dania Inc.*, 716 F. Supp. 3d 655 (N.D. Ill. 2024), and *Colon v. HY Supplies, Inc.*, No. 22-cv-5915, 2023 WL 7666740 (N.D. Ill. Nov. 15, 2023), as though those decisions confirm that *Doe* and *Morgan* already establish that a standalone website is a place of public accommodation. They do not. *Walsh* and *Colon* are district-court decisions adopting one interpretation of the Seventh Circuit's dicta; they do not transform that dicta into a holding the Seventh Circuit itself has never made.

Indeed, *Walsh* expressly acknowledged the point Plaintiff's Opposition obscures: "the Seventh Circuit has not yet decided whether Title III regulates websites." 716 F. Supp. 3d at 659. Judge Kendall instead concluded that *Doe* and *Morgan* had "suggested" that the Seventh Circuit would agree with the First Circuit's broader interpretation, and elected to follow what she characterized as the Seventh Circuit's "considered dictum." *Id.* at 659–60. To the extent *Walsh*

reads those cases as resolving that distinct statutory question, Defendant respectfully submits that it extends their reasoning beyond their holdings.

*Walsh* also arose in a materially different factual setting. Dania operated physical furniture stores as well as its website, and Judge Kendall specifically distinguished *Magee* on the ground that "there is no dispute that Dania is a sales establishment; Dania sells furniture in physical stores and online." *Id.* at 660. That reasoning does not answer whether a standalone website, untethered to any physical retail establishment, independently constitutes a "sales or rental establishment" under § 12181(7)(E).

Nor does *Colon* supply binding authority. As *Walsh* itself explained, *Colon* treated *Morgan*'s language as "considered dictum" rather than a holding and concluded that the dictum was sufficiently deliberate to guide the district court. *Walsh*, 716 F. Supp. 3d at 660 (discussing *Colon*, 2023 WL 7666740, at *6). *Colon* also extends *Morgan* and *Doe* beyond their holdings in circumstances very different from those here. First, on a motion to dismiss, the defendant offered "no binding case law" to support its argument. *Id.* at *5. And second, the Plaintiff in *Colon* offered a much higher degree of specificity of the barriers on the defendant's website, *id.* at *1, which pales in comparison to the boilerplate, general language that is not specific to Dollar Aisle that Plaintiff has offered here.

Those distinctions are paramount. Other courts in this District have declined to make the same interpretive leaps regarding *Morgan* and *Doe*. In *Henry*, Judge Seeger recognized *Colon* and the contrary line of authority but nevertheless concluded that a standalone website does not appear to constitute a place of public accommodation under the statutory text. Plaintiff's disagreement with *Henry* does not make *Walsh* and *Colon* controlling, particularly where the Seventh Circuit itself has never resolved the question.

### C. Plaintiff's Account Describes a Website That is Materially Accessible.

Plaintiff alleged in his FAC that he was **able** to navigate the website successfully through the process of adding the product to his cart. FAC ¶ 41. He nevertheless characterizes the website as so materially inaccessible that it violates the ADA only because he claims the Website failed to provide a confirmation message after he added the product to his shopping cart. While the lack of a confirmation message may not be ideal, the account of Plaintiff's experience certainly does not describe the denial of access to goods and services. Plaintiff does not even allege that he was unable to continue with the transaction—all that is pleaded is that the lack of confirmation created "uncertainty" as to whether the selection had been successful. FAC ¶ 41. Plaintiff does not allege that this lack of confirmation prohibited him from completing the next step in the transaction. In *Doe*, the court discussed businesses that either provided goods and services to people with disabilities and those that did not. *Doe*, 179 F.3d at 559. ("The owner or operator of, say, a camera store can neither bar the door to the disabled nor let them in but then refuse to sell its cameras to them on the same terms as to other customers.") "A camera store may not refuse to sell cameras to a disabled person, but it is not required to stock cameras specially designed for such persons." *Id.* Likewise, Defendant is not required to provide every single available feature designed for visually impaired customers.

Plaintiff fails to state a claim because his account describes a shopping experience in which he was able to locate Defendant's website, understand the products offered, navigate to the product he desired, and add it to his cart. Plaintiff's account ends there because Plaintiff was "uncertain" but took no additional steps to clear up that uncertainty. That is not the denial of equal access to goods and services, and accordingly, Plaintiff fails to state a claim under the ADA.

## Conclusion

Plaintiff cannot manufacture jurisdiction after the fact or convert technical imperfections into statutory discrimination by labeling an otherwise usable transaction "inaccessible." Because the FAC does not plausibly allege a concrete injury or a legally cognizable denial of equal access, the Court should grant Defendant's Motion to Dismiss and dismiss Plaintiff's First Amended Complaint.

Dated: September 4, 2026

/s/ Amanda Igra
Amanda Igra
Revision Legal, PLLC
444 Cass Street, Suite D
Traverse City, MI 49684
amanda.igra@revisionlegal.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date below, the foregoing Brief in Support of Motion to Dismiss was filed with the Court via the Court's ECF system

Dated: September 4, 2026

/s/ Amanda Igra
Amanda Igra
Revision Legal, PLLC
444 Cass Street, Suite D
Traverse City, MI 49684
amanda.igra@revisionlegal.com